METROPOLITAN SEWERAGE DISTRICT OF COUNTY OF MILWAUKEE, Plaintiff-Appellant, v. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Defendant-Respondent.

*No. 75-236. Argued May 4, 1977.—Decided June 1, 1977.*
(Also reported in 254 N.W.2d 190.)

For the appellant there were briefs by *Ewald L. Moerke, Jr.,* and *Robert Arthur Melin* and *Schroeder, Gedlen, Riester & Moerke,* and oral argument by *Mr. Melin,* all of Milwaukee.

For the respondent there was a brief by *Roger S. Bessey, Willard P. Techmeier* and *Borgelt, Powell, Peterson & Frauen, S. C.,* and oral argument by *Mr. Techmeier,* all of Milwaukee.

BEILFUSS, C. J. The broad issue is who is liable for the costs of construction of the new railroad bridge over the relocated stream bed of the Kinnickinnic River when the relocation was occasioned by the Sewerage Commission.[1]

---

[1] The complaint states: "1. That the plaintiff, Metropolitan Sewerage District of the County of Milwaukee, hereinafter referred to as 'District', is a Wisconsin municipal body corporate organized and existing by virtue of the power granted by Section 59.96, Wisconsin Statutes; that its address is P. O. Box 2079, Milwaukee, Wisconsin 53201; that its principal business is the construction of sewers, the improvement of watercourses and the treatment of sewage; and that it acts through the Sewerage Com-

This issue, in the main, is controlled by our opinion in *Metropolitan Sewerage District v. Chicago M. St. P. & P. R.*, 69 Wis.2d 387, 230 N.W.2d 651 (1975). The reasoning of that opinion will not be restated here in any detail.

The railroad tracks of the defendant-respondent railroad company, known as the Green Spur, cross the Kinnickinnic River in the City of Milwaukee in the area between South 20th Street and South 30th Street. For many years the railroad company has maintained a bridge to accommodate its tracks at that location.

On January 25, 1954, the Milwaukee County Board of Supervisors and the railroad company entered into an agreement whereby the railroad agreed to construct a new bridge across the Kinnickinnic River. This bridge was to replace the existing bridge located between South 20th and South 30th Streets in Milwaukee. The construction of the new bridge, known as the Green Spur bridge, was necessary because of relocation of the Kinnickinnic River channel and because the old one was in such a condition that it needed to be rebuilt. The new bridge was constructed in 1956 and paid for by the railroad.

Prior to 1958 the plaintiff-appellant, Metropolitan Sewerage District of the County of Milwaukee, had under study and consideration the improvement of the Kinnickinnic River to eliminate flood conditions. On September 28, 1962, the Sewerage Commission of the City of Milwaukee approved plans and specifications for the reshaping, relocating, widening and deepening of the Kinnickinnic River from South 20th Street to South 30th Street. Included in these plans was the construction of a new Green Spur bridge. The existing course of the channel was again to be changed.

In July, 1963, the Sewerage Commission, on behalf of the Metropolitan Sewerage District, entered into an

mission of the City of Milwaukee and the Metropolitan Sewerage Commission of the County of Milwaukee."

agreement with the railroad. The agreement provided among other things that the Sewerage District would pay for the new Green Spur bridge, but payment was not to prejudice the district's rights to claim payment from the railroad.

After the course of the channel was changed, the new bridge was erected 150 to 200 feet south of the 1956 bridge. The waterway opening under the 1956 bridge was 335 square feet; the opening under the new bridge was 522 square feet. The cost of the bridge was $74,-251.68.

In *Metropolitan Sewerage District v. Chicago, M. St. P. & P. R., supra,* hereinafter *MSD,* there were two bridges at widely separated locations.

This court affirmed the trial court's holding that the Sewerage District was liable for the costs of the Kinnickinnic River (hereinafter KK River) project and that the railroad was liable for the costs of the Lincoln Creek project.

In *MSD* the court construed sec. 190.08, Stats. It is equally important in this case. In pertinent part it reads:

" '*Streams, highways, restored.* Every corporation constructing, owning or operating a railroad shall restore every watercourse, street, highway, road or canal across, along or upon which such railroad may be constructed to former state or to such condition that its usefulness shall not be materially impaired and thereafter maintain the same in such condition against any effects in any manner produced by such railroad. . . .' "

We held that neither sec. 190.08, Stats., nor the common law imposed liability upon the railroad for the costs of the improvement of the KK River project, but held that both the statute and common law imposed liability on the railroad for the costs of the improvements of the Lincoln Creek project. In determining whether the cost of the Green Spur bridge should be imposed on the railroad, it is helpful to examine the reasons why liability

was imposed on the railroad in the Lincoln Creek project but not in the KK River project. Initially, it seems that if the Green Spur bridge is most like the KK River project, cost of the project should not be imposed, and if it is most like the Lincoln Creek project, costs should be imposed.

All three projects are alike in that the conditions necessitating the stream improvements were not caused by the railroads. It was stated in *MSD* at 392–93, that "[t]he master plan for the river, which included straightening, deepening and widening, was designed and executed in the public interest to alleviate a severe flooding problem." In the complaint of the Sewerage District in this case it was stated that the deepening and widening was necessary for the conveyance of storm water flows and drainage. The flooding was a consequence of the growing imperviousness, due to urban development.

In the Lincoln Creek project the new bridge was reconstructed at the same location as the old bridge, whereas in the KK River project the new bridge was relocated and built about 100 feet from the old bridge. The Green Spur bridge was rebuilt 150 to 200 feet south of the old bridge. In this respect the Green Spur bridge is like the KK River bridge.

The principal reason why liability was not imposed on the railroad in the KK River project[2] was that "the construction of the new bridge was necessary not to promote any public interest . . . but . . . to restore the railroad to its prior position."[3] The court noted that neither the state nor the common law rule contemplates the digging of an entirely new watercourse which would necessarily require the abandonment of an adequate bridge and the construction of a new one some 100 feet away.

As to the Lincoln Creek bridge, the court noted that sec. 190.08, Stats., required restoration of the water-

---

[2] *MSD* at 404–06.

[3] *Id.* at 405.

course " 'to such condition that its usefulness shall not be materially impaired.' " The court held that the bridge's "obstruction of the creek's flow and its potential flow was in fact an 'effect . . . produced by such railroad,' contrary to the mandate of sec. 190.08, Stats."[4] Unlike the KK River bridge, the construction of the Lincoln Creek bridge was necessary to promote the public interest. After the channel was deepened the old bridge would have obstructed the creek's flow and continued the flooding problem. The court held that the railroad was responsible for improvement costs under the statute or the common law. The court approved the trial court's finding that the Lincoln Creek bridge was inadequate and detrimental to the flow of the creek as improved. This inadequacy was caused by timber cribbing installed after the bridge was built.

This inadequacy of the Lincoln Creek bridge after channel improvements as compared to the adequacy of the KK River project after channel improvements is the significant difference which resulted in costs being imposed on the railroad for the Lincoln Creek bridge, but costs of relocating the bridge. After deepening and widening, the old KK River bridge would not have obstructed the river's flow. Thus when the course of the channel was changed the railroad was not liable for the costs of relocating the bridge. After deepening and widening, the old Lincoln Creek bridge would have obstructed the river's flow. Therefore, the railroad was liable for the costs of improvement.

The trial court's decision in this case preceded the *MSD* decision. While the trial court did not have the benefit of the *MSD* opinion as a guide, it did note in its written decision that the opening under the old Green Spur bridge "was adequate to accommodate the then existing flow of the channel, but with the change of the course of the channel, and the widening and straighten-

---

[4] *Id.* at 410.

ing of the same, a wider waterway opening under the bridge was required." If the 1956 Green Spur bridge had been adequate and did not obstruct the river's flow after the deepening and widening, as was the case with the KK River bridge, the Sewerage District would have been liable for the costs of the new bridge. But if, after widening and deepening, the 1956 bridge would have obstructed the river's flow, the railroad would be liable for the cost of the bridge. From the opinion of the court and the findings of fact, it is impossible to determine whether the 1956 bridge was relocated and reconstructed because it would have obstructed the increased flow or because the course of the channel was altered. The increased size of the water passage opening of the new bridge could well have been necessary because of the design and size of the bridge rather than an increased flow of water. The railroad points out that the 20th Street bridge, located several hundred feet downstream from the Green Spur bridge, had a slightly smaller water opening than the 1956 Green Spur bridge, but was not widened or enlarged to accommodate an enlarged flow of water.

A salient fact which distinguishes the Green Spur bridge from both the KK River bridge and the Lincoln Creek bridge is its age at the time the Sewerage District determined a new bridge was necessary. A review of *MSD* indicates that no major structural repairs were made on either the KK River bridge or the Lincoln Creek bridge in at least twenty years prior to the new construction. Both bridges were over sixty years old. In September, 1962, a determination was made that river improvements were necessary. Because of the improvements, a new Green Spur bridge was required. At that time the Green Spur bridge was six years old. It had been constructed in 1956 because the channel was relocated. The 1956 bridge construction was at the direction of the Milwaukee County Board of Supervisors. The cost of the 1956 bridge was borne by the railroad.

Its location was negotiated by the railroad and the county, and its life span was to be at least forty years. At the time the 1956 bridge was being constructed the City of Milwaukee Sewerage Commission "had developed a master plan layout for the improvement of the KK River insofar as drainage was concerned."[5]

While developing a master plan for the improvements of the KK River insofar as drainage was concerned, the City Sewerage Commission was not entitled to permit the construction of a new bridge by the railroad and then require another new bridge within six years. This is particularly so when the bridge was constructed pursuant to an agreement with the Milwaukee County Board of Supervisors. The right hand was obligated to know what the left was doing. As the trial court noted—"to require the railroad to assume an additional obligation of financing the construction of a new bridge" within such a short span would violate the fundamental principles of fair play and due process embodied in the Wisconsin Constitution.

We conclude the proof is insufficient to establish that the 1956 bridge was inadequate to carry any increased water flow and that by virtue of our decision in *MSD* the railroad is not liable for the construction costs of the 1963 bridge.

Because we have determined there is no liability on the part of the railroad for the costs of the bridge in question, we do not reach the issue of the statute of limitations asserted by the railroad.

*By the Court.*—Judgment affirmed.

---

[5] We take notice of the statement of facts set forth in our prior opinion. *MSD* at 391–92.